STATE OF NORTH CAROLINA v. KEVIN RAY PARKER

No. COA07-71

(Filed 5 February 2008)

**Evidence— exclusionary rule—officer's eyewitness account of events after unlawful entry—not barred**

The trial court did not err by denying defendant's motion to suppress evidence of an assault on an officer with a firearm inside a house. The officers' entry was with the permission of the spouse who was outside the house but against the express wishes of the spouse inside the house with the firearm. Even if the entry was unlawful, the exclusionary rule does not bar an officer's eyewitness account of events after the entry.

Appeal by Defendant from judgment entered 27 July 2006 by Judge Richard D. Boner in Superior Court, Mecklenburg County. Heard in the Court of Appeals 10 October 2007.

*Attorney General Roy Cooper, by Assistant Attorney General William B. Crumpler, for the State.*

*Richard G. Roose for Defendant.*

McGEE, Judge.

Kevin Ray Parker (Defendant) was convicted on 26 July 2006 of assault with a firearm on a law enforcement officer. The trial court sentenced Defendant to a term of twenty-nine months to forty-four months in prison. Defendant appeals.

The evidence presented at trial tended to show the following: The Matthews Police Department received a telephone call on 31 October 2004 from Deana Parker (Ms. Parker). Ms. Parker told the dispatcher that she had been injured in an altercation with Defendant, her husband. Ms. Parker also told the dispatcher that Defendant had assaulted her on previous occasions, and that Defendant was armed. Ms. Parker left the marital residence (the house) and traveled to a friend's home, where she met police and paramedics. While paramedics tended to Ms. Parker's injuries, Ms. Parker told police that she feared for her own safety and for her children's safety. Ms. Parker also told police that Defendant had made comments about harming himself, and that Defendant had firearms inside the house. Ms. Parker

gave police permission to enter the house, and also gave police a key and a garage door opener to allow them to enter the house.

A short time thereafter, police arrived at the house. Sergeant Amy Clark (Sergeant Clark) knocked on the front door and announced: "Mint Hill Police." Receiving no answer, Sergeant Clark used her cellular telephone to try to contact Defendant inside the house. Police heard Defendant's telephone ring inside the house. Defendant testified that he spoke with Sergeant Clark over the telephone, and that during the conversation, Sergeant Clark asked Defendant for consent to enter the house. Defendant testified that he expressly refused such consent.

Sergeant Clark and other officers then entered the house using the key and garage door opener Ms. Parker had given to them. Once inside the house, the officers began to search for Defendant while continuing to announce their presence. The door to the master bedroom was closed and locked, and Sergeant Clark called for anyone in the bedroom to come out. No one came out of the bedroom, and Sergeant Clark attempted to kick in the bedroom door. Immediately after she kicked the door, two gunshots were fired through the door from inside the bedroom. Sergeant Clark again attempted to kick down the bedroom door, and three more shots were fired through the door. Police were eventually able to open the bedroom door by throwing a vacuum cleaner at the door. When the door opened, officers saw Defendant hiding behind a bed, pointing a rifle towards the bedroom door. After a lengthy standoff during which Defendant continued to threaten police, the officers were able to detain Defendant and take him into custody.

Defendant was indicted by a grand jury on 15 November 2004 for Assault with a Firearm on a Law Enforcement Officer. Defendant filed a motion to suppress all evidence, including police testimony and firearms, which could be traced to the police officers' entry into the house. Defendant claimed that the entry was illegal under the Fourth and Fourteenth Amendments to the United States Constitution, as well as the North Carolina Constitution. The trial court denied Defendant's motion on 24 July 2006, and the case proceeded to trial. A jury found Defendant guilty of Assault with a Firearm on a Law Enforcement Officer on 26 July 2006. Defendant argues on appeal that the trial court erred by denying his motion to suppress. We disagree.

Defendant contends that this case is squarely controlled by the United States Supreme Court's holding in *Georgia v. Randolph*, 547 U.S. 103, 164 L. Ed. 2d 208 (2006). In *Randolph*, police officers asked a married couple for permission to search their marital residence. One spouse refused permission, while the other spouse consented to the search. *Id.* at 107, 164 L. Ed. 2d at 217. Police searched the house, and the nonconsenting spouse was later charged with possession of cocaine based on evidence the police obtained during their search. *Id.* at 107, 164 L. Ed. 2d at 217-18. At trial, the nonconsenting spouse moved to suppress the evidence as a "product[] of a warrantless search of his house unauthorized by his wife's consent over his express refusal." *Id.* at 107, 164 L. Ed. 2d at 218. The trial court denied the defendant's motion to suppress, holding that the consenting spouse "had common authority to consent to the search." *Id.* at 108, 164 L. Ed. 2d at 218. The Supreme Court disagreed, holding that "one occupant may [not] give law enforcement effective consent to search shared premises, as against a co-tenant who is present and states a refusal to permit the search." *Id.*

Defendant argues that under *Randolph*, police had no authority to enter his house without a warrant because Ms. Parker's consent to entry could not prevail over Defendant's refusal of consent. Defendant further argues that no exigent circumstances existed that would otherwise justify the officers' warrantless entry into the house. We do not address the merits of Defendant's Fourth Amendment arguments because we find that even if the police officers' entry was unlawful, the exclusionary rule would not operate to exclude evidence of Defendant's assault on the law enforcement officers.

The North Carolina Supreme Court has previously held that the exclusionary rule does not operate to exclude evidence of crimes committed against police officers whose entry into a house otherwise violates the Fourth Amendment. In *State v. Miller*, 282 N.C. 633, 194 S.E.2d 353 (1973), police entered a building to execute a search warrant. During the search, the defendant shot at the police officers, killing one officer and injuring another. *Id.* at 635-37, 194 S.E.2d at 354-55. The defendant was charged with first-degree murder. At trial, the defendant moved to suppress all evidence about the shooting that police obtained once inside the building, arguing that the officers' search warrant was invalid, and thus "all evidence obtained by such an illegal search [was] inadmissible by Fourth Amendment standards." *Id.* at 639, 194 S.E.2d at 357. The trial court denied the defendant's motion, and he was ultimately convicted of second-degree murder. *Id.* at 638, 194 S.E.2d at 356.

Our Supreme Court found that the search warrant was defective, and thus the officers' entry was unlawful. *Id.* at 639, 194 S.E.2d at 356-57. Nonetheless, the Court affirmed the defendant's conviction, holding that the statutory version of the exclusionary rule in effect at the time "was not designed to exclude evidence of crimes directed against the person of trespassing officers." *Id.* at 641, 194 S.E.2d at 358. *See* N.C. Gen. Stat. § 15-27(a) (Cum. Supp. 1971), *repealed by* 1973 N.C. Sess. Laws ch. 1286, § 26 ("No evidence obtained or facts discovered by means of an illegal search shall be competent as evidence in any trial."). According to our Supreme Court:

> Application of the exclusionary rule in such fashion would in effect give the victims of illegal searches a license to assault and murder the officers involved—a result manifestly unacceptable and not intended by the Legislature. Although wrongfully on the premises, officers do not thereby become unprotected legal targets. Even trespassers may not be shot with impunity. . . .
>
> . . .
>
> Therefore, the gun and all other evidence seized, if relevant and material to the *murder charge*, was admissible; and it was competent for all eyewitnesses, both for the State and the defendant, whether lawfully or unlawfully present, to testify regarding every relevant fact and circumstance seen or heard bearing upon the shooting[.]

*Id.* at 641-42, 194 S.E.2d at 358 (emphasis in original).

While our Supreme Court in *Miller* based its holding upon a statutory version of the exclusionary rule, the Court has more recently made clear that the same principles apply to the exclusionary rule generally. In *State v. Guevara*, 349 N.C. 243, 506 S.E.2d 711 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999), law enforcement officers entered the defendant's mobile home, believing that the defendant was wanted on an outstanding arrest warrant. The defendant shot at the officers, killing one officer and injuring another. *Id.* at 248-49, 506 S.E.2d at 715-16. The defendant was charged with first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. *Id.* at 247, 506 S.E.2d at 715. At trial, the defendant moved to suppress one officer's eyewitness account of the shooting, claiming that the officers' entry was unlawful, and thus the testimony should be excluded as the fruit of an illegal entry. *Id.* at 249, 506 S.E.2d at 716. The trial court denied the defendant's motion, and the defendant was convicted of both charges against him.

On appeal, our Supreme Court affirmed the defendant's convictions. The Court first noted that it was unnecessary to consider whether the police officers' entry into the defendant's mobile home was unlawful because, under *Miller*, the exclusionary rule would " 'not require the exclusion of evidence obtained after an illegal entry when that evidence is offered to prove the murder of one of the officers making the entry.' " *Id.* at 249-50, 506 S.E.2d at 716 (quoting *Miller*, 282 N.C. at 641, 194 S.E.2d at 358). Therefore, regardless of whether the police officers' entry into the defendant's mobile home ran afoul of Fourth Amendment limitations, an officer's "eyewitness account of the events which transpired subsequent thereto [was] not barred by application of the exclusionary rule." *Id.* at 250, 506 S.E.2d at 716.

In the current case, it is likewise unnecessary for us to consider whether the officers' presence in the house was unlawful. Even if the officers' entry was unlawful, both *Miller* and *Guevara* make clear that the exclusionary rule did not bar the introduction of evidence of the subsequent assault at Defendant's trial on the assault charge. We recognize that the defendants in both *Miller* and *Guevara* faced murder charges, while Defendant here was charged with an assault crime. However, our Supreme Court clearly contemplated that the same exclusionary rule principle would apply in cases where a defendant assaulted, rather than killed, a police officer during an unlawful entry. *See Guevara*, 349 N.C. at 250, 506 S.E.2d at 716 (stating that the exclusionary rule does not bar evidence of "*crimes directed against the person* of trespassing officers" (emphasis added)); *Miller*, 282 N.C. at 641, 194 S.E.2d at 358 (noting that application of the exclusionary rule in such circumstances "would in effect give the victims of illegal searches a license to *assault* and murder the officers involved" (emphasis added)). Therefore, we hold that the trial court did not err in denying Defendant's motion to suppress all evidence of the assault that could be traced to the police officers' entry into the house.

No error.

Judges TYSON and ELMORE concur.